Good morning, Your Honors, and may it please the Court, that the evidence for the plaintiff's appealants now reserve any remaining time I might have for rebuttal. This Court's interpretation of the FLSA's administrative exemption has guided courts across the country and the Department of Labor for over 25 years. It is no overstatement to say that Bonneville and Brad are the two of the most important decisions in terminating the FLSA's administrative exemption. Provident asks this Court to hold that the 2004 regulations rendered Bothell and Brad obsolete. The problem there is that the Department of Labor has consistently reconfirmed Bothell's good standing as good law, both during the 2004 notice and comment process and in administrators' interpretations and opinion letters since. The regulatory definition of exempt administrative employees patrols here. Exempt administrators perform work that is directly related to the management or the business operations of the company. And as this Court has repeatedly held, that means they must be involved in running the business itself or determining its overall course of policies, not in just carrying out the day-to-day affairs of the business. Here, the underwriters are not involved in running Provident's business or determining its overall course or policies. Their job is in the day-to-day review of Morgan's loan applications that crash and jail Provident's business. As with the Second Circuit found in Davis, as with the District Court in the Western District of Washington, so they're voluntary. And as with this Court, which I find here. So you think that Lutz was incorrectly decided by the Second Circuit? Your Honor, Lutz is wrong on the law. It's factually distinguishable and it's wrong on its own terms. Tell me how it's factually distinguishable from this case. There's a key factual distinction in Lutz and that is that there, the underwriters were able to grant exceptions to the guidelines of their own accord. Here, underwriters infrequently requested exceptions, only once a month. It was merely a request that went up to corporate and the corporate granted the exception. That's the key factual distinction between this case and Lutz. Lutz is wrong on the law because the core premise of the holding is that the duty of underwriting is merely ancillary to the production activity of the bank. And that's actually the same exact rationale that the District Court used in the Bothell case. And when Bothell came up to this Court, this Court reversed and said that's wrong. That's not the analysis under the discretionary independent judgment problem. And then third, Your Honor, on Lutz, it's wrong on its own terms because it finds an exemption by analogy. Okay? It admits that underwriters are not financial consultants. Underwriters are not insurance adjusters. There's no specific finding that underwriters perform any duty that's directly related to the management or the business operations of the company. And therefore, the holding should admit that underwriters are not exceptions. Let me ask you this. It seems like you dispute that underwriters use independent judgment in their discretion with respect to matters that are significant. But it seems that underwriters did not exercise discretion in the performance of their small primary duties. Then why couldn't Providence use its automated underwriting system in place of the underwriters? The first part of discretion, Your Honor, is that it's a conjunctive test. The exemption is a conjunctive test. It is Providence's burden. And so this burden may not even reach discretion if it finds directly under the second prong. But the question of whether a computer could do the job completely frames the discretion analysis in the wrong manner. It is not the case that any job that can't be done by a computer has an exempt function. Otherwise, anyone sitting in an office would be exempt. The key distinction really lies in the regulation regarding the use of manuals. And that's 541.704. And so an exempt employee who exercises discretion in independent judgment and only infrequently refers to manuals that address novel and difficult circumstances is still exempt. And so the infrequent reference to manuals for novel and difficult circumstances does include the exemption. But what's one of the challenges is there's so many regs that cover, you know, this area. And I think it's 541.203b states that employees in the financial services industry generally fall within the administrative exemption if their duties include work, such as collecting and analyzing information regarding the customer's income, assets, investments, or debts. And it seems like that's the exact primary duty of Providence underwriters here. So why is that one the one that we look at in making this determination? I know you just pointed this to another one, so help me out here. Certainly, Your Honor. The regulations 541.203 are examples. They're examples for the employees which may be exempt. They do not override the core principles of the regulation, which is that the duties must be directly related to management or business operations. Okay, but one of the examples of an administrative type duty is determining which financial product specifying the customers needs to have financial circumstances. And I'm just wondering as to what a Providence underwriter does when it makes a decision to an officer. So while Attorney Davis got it right in that you have to look at the entire regulation, you can't isolate the first sentence from the example. The DOL sub-regulatory authority makes it clear that this example was meant to describe financial consultants and advisors. That's in the 2004 notice and comment. And the three cases that the DOL looked to in drafting this regulation, they're behind in Davis. And all of those cases involve employees who are running their own offices, as well as being in the insurance context. And it's employees who are running their own offices, marketing and servicing the products, and giving financial advice. And so the point on 541.2 of 3B is that the regulation describes financial consultants and advisors. Underwriters are not financial consultants and advisors, specifically counter-offers. Your Honor. I'm going to put mine real quick. Okay, last week you had an argument that they were very similar to claims adjusters. How can you respond to that? Because it seems to be similar types of duties to claim adjusters. Yes, Your Honor. The same argument was made in BRAD. And claim adjusters have been deemed to re-administrate positions, right? Yes, Your Honor. Can you talk to me about that? Certainly. The same argument was made in BRAD, and this was rejected 25 years ago. Okay. And in a quote from BRAD is, the argument was that the probation officers provide recommendations similar to insurance claim adjusters. But those do not involve the proper way to conduct the business, but merely provide information which the court uses in the course of its daily production activities. It's the same thing that underwriters do here. The difference between the insurance claims adjusters and the underwriters here is that claims adjusters do perform an administrative function that goes to the running of the business. The claim adjuster's job is to review claims made against the company, to assess the risk to the company by those claims, and to negotiate those claims, and to try to mitigate the risk that is made on claims made against the company. That's a core administrative function. And in fact, Provident has employees that perform that same function, and it's not the underwriters. So in the context of mortgage loans, there are what's called repurchase requests. And so Provident issues a loan. It's bought on the secondary market. An investor buys it, and then the loan goes bad. The investor looks at, well, did the underwriter properly follow all of the guidelines here? And if the underwriter didn't follow all of the guidelines and made a mistake, then the investor says, Provident, you have to purchase this loan back. That's a repurchase request. That is similar to a claim made on an insurance policy. That's a repurchase request to Provident. It's a separate group of employees that review the facts regarding the repurchase request, then analyze the risk faced by Provident in conjunction with their repurchase request, and determine and try to negotiate that as the price goes down. And so that's the difference between these adjusters and the underwriters. Thank you for these questions. I know that's the part you say, but just to correct the request questions,  Yes, Your Honor. The district judge basically is the opinion of the opinion of states no or uncounted for in facts. And it was in your brief, or one of your briefs, you had expressed the view that there were disputed facts that were debatable. But you don't seem to carry that forward on the appeal. And the question I have is whether the district judge was correct in deciding this There are no disputed facts as to the second prong of the exemption directly related to business operations. The parties cross both on that prong. There are no disputed facts. We did not move as to the discretion prong below, for the reason being that it's a conjunction test of how them bears the burden. And so we only had to show that they could not meet their burden as to one of the prongs. We chose prong two. And so as to whether there are questions of fact on the discretion prong, we argued below. The judge may still be injured. But that there is certainly a problem that hasn't carried its burden, showing that there are no disputed questions of fact. Do I think the appellate record, as it's presented now, provides all the evidence sufficient for a court to issue a finding in the appellant's favor, even on the discretion prong? Well, I understand that's how you briefed it. But if we're, if we believe there are genuine, if there are issues of fact, and it's their material, then it should require a remand. Yes, yes, Your Honor. If the court determines that there are material issues of fact on the discretion prong, that would require a remand. The parties agree. There are no disputed issues of fact as to the second prong, directly related to business operations. The only question there is whether the act of underwriting, and there's no dispute about what the act of underwriting is, whether the act of underwriting goes to the running of Providence business, determining its overall course or policies, as opposed to the day-to-day loan operations. Yes, Your Honor. I agree with that. Would you, in discussion of your point, want to have three discussions in the trial court, or? We were on the eve of trial with the trial. They said, Your Honor, so the discovery was closed. If it's remanded to the fact questions on the third prong, then third prong, the discretion prong. It's the second court, Your Honor. Well, the first one's not a dispute, so we're sort of, we're skipping one, but we're calling them two and three. The first prong is the salary basis test. Yes. And so, if it's remanded, then to the background questions, it would go to trial. If it's reversed, then it would go to a damages front. And with that, I'll reserve my remaining time. Thank you. In this court, my name is Howard, and I represent that savings bank. I'm splitting my time with my colleague, Michael, under which I will be addressing the second prong of the administrative exemption test, relating to assisting in the running and servicing of a business. Mr. Ludwood will be addressing the third prong of the administrative exemption test, relating to the exercise of independent judgment and discretion with respect to matters of significance. Now, when counsel began his argument, according to this court's prior decisions in Grant and in Bothell, counsel did not mention this court's more recent prior decision in the Farmer's Insurance Exchange case. Now, in Farmers, this court looked to what we call these industry regulations in determining that insurance claims adjusters were exempt employees under the administrative excession, in the same way that the court, the Sixth Circuit Court of Appeals in Plus, looked at the industry exemptions, the financial services industry, to determine that mortgage underwriters, there were exempt employees. This court in Farmers looked at the same set of regulations, only this time dealing with insurance claims adjusters, to determine that the insurance claims adjusters were exempt employees. So, of course, the decision in Plus, contrary to counsel's statement, was totally consistent with the methodology applied by this court in the Farmers case. Now, counsel also mentioned that the financial service industry regulations were really designed to cover financial consultants and financial advisors, but I'd like to point out to the court that there have been at least two cases where the financial services industry regulations, which, of course, are the regulations that, as the court pointed out, we continue to apply here, that these two cases where the financial services regulations were applied to the mortgage industry. One is in a case that started out as a Mortgage Bankers Association versus Lease. It went to the District Court of the District of Columbia, and it went to the US Supreme Court as Perez versus Mortgage Bankers Association. Then another case out of the Sixth Circuit called Henry versus Quicken Loans. Now, in the Henry versus Quicken Loans case, the court, the Sixth Circuit, again, relied on the financial services industry regulations to find that mortgage bankers were exempt employees under the administrative exemption. And then, again, in being in a case, so Lease versus Mortgage Bankers Association, which is the District Court of the District of Columbia, considered those regulations in the context of mortgage loan officers in addressing and achieving a position at various departments of labor, opinion letters concerning the exempt or non-exempt status of mortgage loan officers. So we do have evidence that these financial services industry regulations apply in the mortgage industry. Let me ask you about some of these regulations. I have some questions about 541.201B. I guess I just wanted to hear from you how you think the writers do sit within this section, because based on my review, and it gives examples of the work directly related to management or general law of business operations, and it doesn't seem like the underwriters seem to fit well within these categories, because this right, see, appears to be focused more on creating or administering company policies and procedures at a higher level than what the underwriters seem to be responsible for. So if you could talk to me about that. Let me address that in two ways. First, let me address the last issue that you raised, this higher level of responsibility. The test for the administrative exemptions, council prongs, evidence to be pronged, the first prong is a salary basis prong, and the second prong has to do with the job duties, and the third prong has to do with the level of responsibility, the way that the Department of Labor has characterized that, and the prong is that the employees have to exercise discretion and independent judgment with respect to matters of significance. In 2004, when the Department of Labor looked at the regulations, they thought about and proposed putting in the third prong a position of responsibility requirement that was rejected, and they stayed with exercising discretion and independent judgment with respect to matters of significance. And going to the regulation, that regulation sets forth certain top functions that the Department of Labor is bound to qualify for the administrative exemption. So literally, it's a different regulation. Obviously, the financial services industry regulation, and your honor's correct, there are lots of regulations here. And in that regulation, one of the job functions is quality control, and that, of course, is the basis on which the Supreme Court found favor. In this case, Judge Morrell found that the job functions of the mortgage underwriters were equivalent analogous to job functions. I am trying to sort of reconcile what it says, and there is a mention of quality control, but there's also this focus on this higher level. But you also relied pretty heavily on regulation 542.203B. I guess arguing this, underwriters' primary duty should directly relate to the province management or general business operations. But they use the term analyze, or you argue, but even if we conclude, I guess, that the underwriters analyze information regarding the customer's income, assets, investments, and debts, I'm just trying to figure out, how can we conclude that the term analyze, as used in this section, does not include the very restricted type of analysis? I'm not sure. Was there, and I'm sorry, but it seems like the duties directly relate to province management or general business operations. But even if we conclude that the underwriters analyze information regarding the customer's name or income, assets, investments, or debts, they are clearly required to follow detailed guidelines. I mean, they're supposed to adhere to these guidelines that Providence provides in building this analysis. And so it seems like it's a very restricted analysis. And so I'm just trying to figure out how it fits in there. So we will address the issue of the guidelines because that relates to the third prong, Your Honor, relating to the exercise of discretion and interdependent judgment with respect to matters of significance. But I would point out that the solicitation provides that to qualify for the administrative exemption, you don't have to actually run and service the business. And as I think Council pointed out, the regulation specifically said that you have to assist with running and servicing of the business. And I think there's a difference between running and servicing and assisting in the running and servicing of the business. And I will say here, before I turn this over to Mr. Leibowitz, that we believe that our mortgage underwriters do assist in the running and servicing of the business by exercising their independent judgment and discretion in analyzing these loan applications to determine whether or not the applications meet the level of risk that Providence is willing to accept in making that sense by determining, you know, when Providence is going to risk its money in the mortgage and why they are assisting in the running and servicing of the business as defined in various departments of labor regulations. Thank you. Thank you, Counselor. Good morning, Your Honor. I'm looking at a blank roll from the Providence Savings Bank. Did I ask you the same question I asked your colleague? Do you agree that the facts are disputed on the discretion of Providence? Do you agree that they were disputed? Yes. I think there were enough facts that were undisputed to justify a granted authority judgment in favor of Providence. Right. But I would be willing to agree that Rule 56 is not mentioned by either of you. In the Supreme Court's trilogy, it goes back a number of years, gives a number of rules that district court judgments still apply when dealing with the standard facts. And there's none of that analysis in the district court's opinion. So, what, do you agree with that, or if you don't agree, do you agree with your colleague that there should be a remand? I don't have an objection to that. I think the district court analyzed the evidence and looked at the disputes and the evidence and the purported disputes and concluded that there were certain factual issues that were not in dispute and the undisputed facts justified granting of summary judgment on the discretion of an adjudicative prerogative. Well, if that happens, unless we find that there were some of the disputed facts are material, what do you think, what should happen then? Then there would be a remand. And do you think there'd be more discovery, or there'd be trial, or the district court could reconsider those more specifically as to whether they're material or not? I think it'd be interesting to see what the tribal or disputed facts were in the court's estimation. If there was evidence that was missing that gave rise to potentially a tribal issue, then I would keep discovery to be appropriate to fill in those blanks. But we have, it's not in dispute that the underwriters could request exceptions to the guidelines and that the district court found that requesting exceptions to the guidelines allowed them to exercise discretion in independent judgment. It's not in dispute that the underwriters could make counteroffers after they finish their analysis of a work is on their location. They can make a decision if the guidelines weren't meant to make a counteroffer. But their discretion there is relatively restrained, as in in the counteroffers, they still don't have to determine that the borrower meets the qualifications for a different mobile project. But I think that is what they're doing. If the purpose of a counteroffer is the underwriter analyzes the product that the borrower has applied. It still has to, I'm sorry, I said that wrong. But yeah, so but it's still restrained, isn't it, in their ability to make a counteroffer? Well, the counteroffer is, yes, the expectation would be to make a counteroffer that the borrower would qualify for the guidelines, but here's the product. That's true. The other ways we showed that they exercised discretion in Edentogen are making conditions, putting conditions on loans. And the impact of these things that we're talking about, making conditions on loans, or making counteroffers, or requesting exceptions to the guidelines, it's not just that they allow the underwriters to deviate from the guidelines, that there's a significant impact and import in doing these things. And that's the providence ability to make a loan to the particular buyer who falls on whether the loan is going to be approved. That's, if it can be, that's a providence business. That's how they make money, by getting a loan approved that they can sell on the secondary market. If a borrower doesn't make a counteroffer, because the borrower, I mean, the underwriter has discretion to make a counteroffer. They have the discretion to say not to make a counteroffer. If they don't make a counteroffer, they deprive the borrower of the business opportunity. If they do, then there is a business opportunity. There's also, and this was pointed out, the balance brief in page 17, there's a reputational issue to providence if underwriters do or don't make loans. That if providence develops reputation among loan brokers as being, it's more difficult to get a loan approved than having to custom business down the line. So these decisions that the underwriters are making are significant. They have a significant impact on providence ability to do business, on providence ability to solve laws, on providence ability to maintain a reputation in the business community. So I thought you were saying there's a parameter in terms of what the probation officers have a right to have their discretion on the field. They do, and I think the Brad decision went more along the production administration dichotomy and kind of went down that path. I think a more interesting analysis or comparison here is the farmer's case. Talk about the insurance adjusters. The insurance adjusters in the farmer's case, the argument in that case also is they were guided by computer software that assisted them in estimating the value of claims. There were detailed guidelines. There were trading manuals. The expectation was that the insurance adjusters would come up with the exact value of the claim, nothing more, nothing less. And their results were automated to make sure they came within a 2% margin or higher. That's a very tight constraint. And all of that notwithstanding, the finding was that they still exercised discretion in independent judgment because they used discretion in independent judgment to come up with their conclusion. How did they do that? One way that the court looked at was credibility determinations. They had to make credibility determinations to decide whether they believed that the claim was a valid claim. Here, the underwriters do the same thing. When we talked in the briefs, there is evidence about the issue of whether a buyer intends to occupy a home in an instance where a home product requires owner occupancy. The guideline calls for owner occupancy, but it doesn't tell the underwriter necessarily how to figure that out. The underwriter has to look at things like what's the commute from where the borrower works to the home they're buying, or what's the relationship of their income to their commute. One underwriter testified it didn't make sense for a minimum wage worker to commute 100 miles to their job. What if the home buyer is buying a bar or is buying a home next door to their home? That doesn't make sense. As an owner occupancy, it's more likely to be a rental. But here, unlike the insurance payment justice, there's no express regulation that gives guidance on whether the mortgage underwriters are exempt. Isn't that correct? The financial services industry regulation. But it's not solicited. There's a mortgage underwriter's insurance. My guess is you'd probably just do his payments on the same basis, that it didn't reach the discretionary aspect. The only two courts that reached the discretionary aspect were the mortgage underwriters. One was the Tudor Court in this case, and the other Lutz case. Both the Bollinger case and the Davis case didn't reach the discretion. One other point I want to make. The only factual distinction the counsel pointed out on the Lutz case that made it different from this case was that the underwriters in that case could grant exceptions without approval. In the farmer's case, the insurance justice underwriters were held to be exempt. Likewise, farmers had a claim, and he could approve them. And the court concluded that that wasn't the case. And didn't he get out of the realm of exercising discretion and independent judgment in recommending a course of action after exercising discretion and independent judgment was enough? Yeah. Thank you, counsel. Your Honor, the reason only two courts reached discretion is it's a conjunctive test, and it often bears the burden. I'd like to address three cases. Perez, Henry v. Quicken, and then Farmers. Perez was an Administrative Procedures Act case, and the only question there was whether the Department of Labor underwent the proper notice and comment procedure. Henry v. Quicken was an appeal of a jury trial, and the jury there found that the law officers did all of the things listed in 541.203b. Not only did they analyze information, but they also worked with the borrower to determine the product that would best fit the borrower's needs. They advised the borrower regarding the advantages and the disadvantages of the financial products, and they marketed, serviced, and promoted the products. And so the jury found that the loan officers were not underwriters, of course. These are the people talking to the borrower. The loan officers fit precisely within all four corners of the example, and the Sixth Circuit did not overturn that jury finding. And that brings us to Farmers. So in Farmers, at the trial court level, it was determined that some of the adjusters satisfied seven of seven of the advantages in the example, and some satisfied six of seven. Here, we're talking about one of four. It's just not the same. Second, the insurance adjuster example describes insurance adjusters in the case of insurance adjusters. Here, the financial services example describes consultants and advisors, and underwriters aren't consultants and advisors. In fact, federal banking regulations prohibit any discussion between the underwriters and the borrowers. They can't help the borrower select the product that best fits their needs. They can't advise the borrower. And that brings me last to counteroffers. A counteroffer is not drafting a new product that decides what the borrower's needs. It's merely a situation where the borrower doesn't qualify for product A, and the underwriter says, well, if you go down to aisle 10, they also have product B, and maybe a loan officer isn't going to talk to the borrower about that. Thank you, counsel. Thank you. Those are your arguments today. Case is adjourned for decision. And we'll be in recess for the morning.
judges: Thomas, Murguia, Baylson